June, 1811.

### Titus L. Bissell *against* Jonathan W. Edwards.

A sheriff's deputy seiz-- the goo-- *A.* and -- them in sa-- faction of --n execution in favour of *B.* against *C.*and from the a-vails, pays over the a-mount of the execution to *B.*; held, that the officer is not entitled to recover back the mo-ney paid to *B.* notwithstand-ing that he had been compelled by suit, to pay the value of the goods to *A.*

THIS was an action of *indebitatus assumpsit*, brought to recover a sum of money, claimed to have been paid to the defendant by mistake.

It was stated in the declaration, that the defendant deliv-ered to the plaintiff, who was a sheriff's deputy, a certain writ of execution in favour of *Hitchcock, Wolcott and Co.* against *Moses Twiss*, for the sum of one hundred seven dollars and seventy cents, dated the 10th day of *March*, 1807, and that the plaintiff received such execution to levy and return according to law ; and that on the 21st day of *March*, 1807, the plaintiff, by virtue of such execution, it being then in full life and unsatisfied, levied on 169 boxes of house slate, as the property of the debtor, and sold the property in the manner prescribed by law, and applied the avails in dis-charge of the execution ; that at the time of such levy and sale, the plaintiff believed that the slate was the property of the debtor ; and that the plaintiff was unable, during the life of the execution, to find any estate belonging to the debtor, or his body ; that on the 16th day of *April*, 1807, the plaintiff paid to the defendant, from the avails of the pro-perty sold, the full amount of the several sums contained in the execution. It was then averred, that the slate sold in exe-cution, was not the property of the debtor, but was the prop-erty of one *Ebenezer Twiss*, and was not liable to be sold in satisfaction of the debt of *Moses Twiss* ; and that the levy of the execution and sale of the slate, was made by the plaintiff, through mistake.

It was also averred, that since such levy and sale, *Ebene-zer Twiss*, the owner of the slate, had recovered a judgment against the present plaintiff, in a suit instituted by him for the injury sustained on account of the seizure and sale of the slate, as before stated, and that such judgment had been satisfied by the plaintiff.

June, 1811.

BISSELL
*v.*
EDWARDS.

There was, also, a general count for money had and received to the plaintiff's use.

It was admitted, on the trial of the cause, that the defendant had made no express promise to repay the money received of the plaintiff.

The plaintiff offered in evidence to the jury, the record of the judgment in favour of *Ebenezer Twiss* against him, mentioned in the declaration ; to the admission of which the defendant objected, on the ground that he was not a party in that suit ; but the court permitted such record to be read, for the purpose merely of proving the amount of such judgment, but not as evidence, that the slate was the property of *Ebenezer Twiss.*

The plaintiff also offered in evidence, a copy of the original writ of attachment in favour of *Hitchcock, Wolcott and Co.* against *Moses Twiss,* by virtue of which the slate was attached, with a copy of the officer's return, the plaintiff having served such writ as sheriff's deputy, in which return the plaintiff alleged, that the slate was attached by direction of the defendant. The defendant objected to the reading of that part of the return wherein it was stated, that the defendant had given directions to the plaintiff to attach the slate in question, as the plaintiff could not be permitted to give in evidence his own return to prove that fact : But the court permitted such copy to be read to the jury, subject to such direction as should be afterwards given them in charge.

And the court thereupon, in charging the jury, directed them to lay out of the case, the evidence arising from the attachment and the officer's return, relating to any direction of the defendant, stated to have been given to the plaintiff to attach the slate, as no such fact was alleged in the declaration : And the court also further instructed the jury, if they should find that the property sold by the plaintiff, and from the avails of which, the money claimed by the present action, was paid to the defendant, was the property of *Ebenezer Twiss,* and not the property of *Moses Twiss,* and that the money was paid to the defendant by mistake, then the law was so, that the plaintiff was entitled to recover ; but

that they ought not to consider, that the judgment in favour of *Ebenezer Twiss* against the present plaintiff, proved, or conduced to prove, the property attached to be the property of *Ebenezer Twiss*; but, that such fact must be found to have been proved by other legal evidence produced on the trial. Whereupon, the jury returned a verdict for the plaintiff;—and the defendant moved for a new trial of the cause, on the ground of a misdirection, and also on the ground, that the court erred in admitting the evidence, as before stated; which motion was reserved for the consideration of the nine Judges.

*Daggett* and *Dwight*, in support of the motion.

1. The record of the judgment in favour of *Ebenezer Twiss* against *Bissell*, was improperly admitted as evidence to the jury. *Edwards* was not a party on the record; the evidence was, therefore, irrelevant; and the averments in the declaration relating to that judgment were unnecessary: the fact, therefore, was immaterial. The evidence did not conduce to prove a title in the plaintiff, nor did it shew the value of the property. *Church* v. *Leavenworth*, 4 *Day*, 274. *Ryer* v. *Atwater et al.* 4 *Day*, 431. *Chapman* v. *Champion*, 2 *Day*, 101.

This record could not be proved as a fact, nor could it be admitted to prove the amount of the judgment. For such purposes, the evidence was unnecessary. The only reason, then, for admitting it, was, that *Bissell* could not recover against the present defendant, without shewing the fact that the owner of the property had recovered a judgment against him. The plaintiff claims, that this action can be sustained, on the ground, that the avails of the property sold were paid to the defendant by mistake. When did the right of action accrue? If such right ever existed, it must have accrued at the time when the money was paid. Suppose that *Bissell* had paid the value of the property to the right owner, without a suit, would not his claim against *Edwards* have been as valid as it is now? The happening of an event, to wit, the bringing of a suit by *Ebenezer Twiss* against *Bissell*, does

not create a right of action against the defendant, which did
not exist before.   Before the plaintiff can sustain this ac-
tion, it must be shewn, that the defendant never had any
right to retain the money.

2. The charge was incorrect.   The plaintiff must shew a
cause of action ; otherwise, he cannot recover.   The court
ought to have so instructed the jury.

By the ancient common law, the sheriff levied at his
peril, and a promise of indemnity against the claims of third
persons, was void.  1 *Rol. Abr.* 26.  But the law of *England* is
now otherwise.   *Arundel* v. *Gardiner, Cro. Jac.* 652.  The
doctrine is not now extended further than this, that the
officer levies, at his peril, on the property of third persons.
He cannot claim indemnity from another for his own neg-
lect.

There is one other point of view in which this case ought
to be considered.   The plaintiff, in relation to this case, is to
be viewed as a trespasser ; he has been compelled to pay
damages for an injury done to the property of another—for
a tortious act.   There can be no contribution among joint
trespassers.  *Farebrother* v. *Ansley et al.* 1 *Campb.* 343.

*T. S. Williams* and *J. Trumbull,* contra.   The record of
the judgment in favour of *Ebenezer Twiss* against *Bissell,*
was properly admitted.   It is stated as a fact in the declara-
tion.   The averment is material.   It was necessary to shew
that the owner of the property had recovered the value of it
from the plaintiff.   The plaintiff was obliged to state in his
declaration, that he had paid the money once to the defend-
ant : He has stated the particular manner in which he has
been compelled to pay it over ; it became necessary there-
fore, for him to prove the fact.  *Swift's Ev.* 15.   *Blasdale* v.
*Babcock,* 1 *Johns. Rep.* 517.

They contended also, that the defendant was not entitled
to retain the money.  1 *Term Rep.* 236.

SWIFT, J.   The plaintiff in this action, claims, that the
defendant delivered to him, he being a deputy sheriff, an

VOL. V.                        N

execution in favour of *Hitchcock, Wolcott and Co.* against *Moses Twiss,* which he levied on certain estate, sold it, and paid the money to the defendant ; that the estate on which the execution was levied belonged to *Ebenezer Twiss,* who had since, by suit, recovered the value of it from the plaintiff.

The court charged the jury, that if they found that the property on which the execution was levied, belonged to *Ebenezer Twiss,* and not to *Moses,* and that the plaintiff had paid the money to the defendant, the defendant was liable to refund it.

It does not appear, that the defendant had any interest in the execution, or, that he was attorney or agent to *Hitchcock, Wolcott and Co.* The effect, then, of the charge, is to decide, that where the neighbour of a creditor, takes an execution, and delivers it to an officer to collect, and receives the money to transmit to the creditor, in case the property levied upon did not belong to the debtor, the officer may recover back the money from him. Admitting, that the officer would be entitled to a remedy in such case, it is perfectly clear, that the defendant would not be liable to him, for the sole act of delivering the execution and receiving the money. But, it is equally clear, that the creditor himself would not be liable to this action.

When an officer receives an execution to levy and collect, the law has pointed out his duty, and ascertained his responsibility. If, on demand of the money of the debtor, when he can be found, or at his place of abode, he refuses to satisfy the execution, the officer is bound to levy on his personal estate, if it can be found, if not, then on his body, unless the creditor directs a levy on land. If neither person nor estate can be found, he must return the execution, within the life of it, with an indorsement of *non est inventus.* The creditor is not obliged to give any special directions. The officer must look to the execution for his rule of conduct : He must levy at his peril, and is liable in case of mistake. This is a part of the responsibility of the officer, and without such responsibility, creditors would have no

June, 1811.

BISSELL
v.
EDWARDS.

security for the faithful service of their executions. If the officer neglects to levy on the estate of the debtor, when he has the power to do it, he becomes responsible to the creditor for such neglect. If he levies on estate which does not belong to the debtor, though by mistake, and causes it to be sold, by which the execution is discharged, he becomes re-responsible for such misconduct, in the same manner as for a neglect of duty in not levying an execution. He cannot excuse himself, by alleging, that the estate did not belong to the debtor : for this is the very misconduct that creates his liability.

If, under such circumstances, he can maintain an action against the creditor, he will be enabled to obtain an indemnity for his own neglect. The creditor would be subjected to a suit, when money had been voluntarily paid to him, and under such circumstances, that he could not know, that he was not entitled to retain it. He would not only be liable to refund the money received, but would, also, be subjected to the expence of obtaining a new execution, to collect a debt, discharged by the blunder of the officer who is seeking a remedy against him for it.

This would be a very extraordinary change of responsibility. The creditor would be liable for mistakes, instead of the officer who committed them.

If such were the rule, creditors would run great hazard in delivering executions to officers ;—but officers would have very little inducement to fidelity, when they could have such an easy remedy for their own mistakes and blunders.

I am, therefore, of opinion, that a new trial ought to be granted.

All the other Judges severally concurred in this opinion.

New trial to be granted.